1

2

3

4                                                    **E-FILED on** __9/30/2008____

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

| | |
|---|---|
| 12  In re CONSECO INSURANCE CO. ANNUITY MARKETING & SALES PRACTICES LITIG., | No. C-05-04726 RMW |
| 14  ———————————————————— | ORDER RE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT |
| 15  This document relates to: | |
| 16  ALL ACTIONS | |
| 17  | **[Re Docket No. 103]** |

18        The operative complaint, the Second Amended Consolidated Class Action Complaint

19   ("SAC"), has been filed by plaintiff Robert H. Hansen ("Hansen") against the following five

20   defendants: Conseco Insurance Company ("CIC"), Conseco, Inc. ("Conseco"), Conseco Services

21   LLC ("Conseco Services"), Conseco Marketing LLC ("Conseco Marketing"), and 40/86 Advisors,

22   Inc. ("40/86").  Two defendants, Conseco and 40/86, move to dismiss the second amended

23   complaint for lack of personal jurisdiction; four defendants, Conseco, 40/86, Conseco Services and

24   Conseco Marketing, move to dismiss all causes of action for failure to state a claim.  For the reasons

25   set forth below, the court grants the motion of Conseco and 40/86 to dismiss for lack of personal

26   jurisdiction and denies the remaining defendants' motion to dismiss for failure to state a claim as to

27   all claims except plaintiff's breach of fiduciary duty and aiding and abetting the breach of fiduciary

28   duty claims.  Those two fiduciary duty claims are dismissed with prejudice.

United States District Court
For the Northern District of California

1

2                                    **I.  BACKGROUND**

3    **A.      Procedural Background**

4           The operative complaint, the SAC, was filed after this court granted in part and denied in

5    part the motion to dismiss the previous operative complaint, styled as a "Consolidated and Amended

6    Class Action Complaint"[1] ("CACAC"), by order dated February 12, 2007 ("Order").   The SAC adds

7    four defendants in addition to the originally-named defendant CIC:  Conseco, 40/86, Conseco

8    Services and Conseco Marketing (collectively "Moving Defendants").  The SAC also drops one of

9    the two named plaintiffs, Friou Jones, leaving Robert H. Hansen as the sole named plaintiff.  The

10   SAC includes ten enumerated claims:  (1) two RICO claims, one each under 18 U.S.C. § 1962(c)

11   and (d); (2) an elder abuse claim under Cal. Welf. & Inst. Code § 15600 *et seq.*; (3) a UCL claim

12   under Cal. Bus. & Prof. Code  § 17200 *et seq.*; (4) a false advertising claim under Cal. Bus. & Prof.

13   Code  § 17500 *et seq.*; (5) a breach of fiduciary duty claim; (6) an aiding and abetting breach of

14   fiduciary duty claim; (7) a fraudulent concealment claim; (8) a claim for breach of the duty of good

15   faith and fair dealing; and (9) a claim for unjust enrichment and imposition of a collective trust.

16          CIC previously moved to dismiss the SAC for failure to state a claim.  The court granted the

17   motion only as to plaintiff's claims for breach of fiduciary duty and for aiding and abetting breach of

18   fiduciary duty.  The court gave plaintiff 20 days to amend but plaintiff chose not to amend those two

19   claims.[2]

20          The Moving Defendants, the four added defendants in the SAC, bring the current motion.

21   **B.      Factual Background**

22          The following facts are taken from the SAC and are assumed to be true for the purposes of

23   the present motion to dismiss.  In March 2000, plaintiff purchased from sales agent Robert Zehner a

24   "Conseco Choice equity-indexed annuity" issued by CIC ("the CIC annuity").  Plaintiff financed the

25   purchase by selling an annuity issued by another company.  Plaintiff was sixty-eight years old when

26   _____

27   [1]  No class has been certified under Rule 23.

28   [2]  In their motion, Moving Defendants again seek dismissal of plaintiff's claims for breach of
     fiduciary duty and aiding and abetting breach of fiduciary duty.  Plaintiff presents no opposing
     argument as to these claims.

**United States District Court**
For the Northern District of California

1  he purchased his CIC annuity.  Plaintiff's CIC annuity had a maturity date of 2027.  It gave Hansen

2  the option to reset the maturity date, but the maturity date could only be reset after the expiration of

3  the surrender charge period on the annuity, which was allegedly fifteen years.  Both the original

4  maturity date and the surrender charge period allegedly extend beyond Hansen's actuarialized life

5  expectancy.  The CIC annuity also imposed a surrender charge of 20% for the first five contract

6  years.  Plaintiff cashed out of his annuity in 2004 and alleges that after paying this 20% surrender

7  charge, he suffered a return of negative 4.09% on his investment.

8           CIC sells annuities and, according to plaintiff, along with Moving Defendants Conseco,

9  Conseco Services, Conseco Marketing and 40/86, engages in a wide variety of unsavory practices

10  when marketing annuities to persons sixty-five years of age and older.  CIC and its sales agents

11  allegedly purposefully misrepresent the characteristics of the deferred annuities they sell to older

12  persons.  The gravamen of plaintiff's case is that CIC's deferred annuities are generally inappropriate

13  for people over sixty-five years of age because an older person who buys a deferred annuity is likely

14  to die before it fully vests.  This allegedly makes such an annuity a poor investment vehicle, and

15  persons sixty-five and older would not buy these annuities if CIC adequately disclosed the terms of

16  the annuities before purchase.  In the operative complaint, plaintiff also alleges that defendants

17  failed to disclose their precarious financial position and the questionable value of their underlying

18  investments, which made the purchase of an annuity more risky and less valuable than a treasury

19  bond.

20           Plaintiff alleges that CIC is part of the same family of companies as Conseco, Conseco

21  Services, Conseco Marketing and 40/86.  Conseco is a holding company that allegedly conducts all

22  of its operations through its subsidiaries.  Conseco is the parent company of which CIC, Conseco

23  Services, Conseco Marketing and 40/86 are all direct or indirect subsidiaries.  CIC is a subsidiary of

24  Washington National Insurance Company; Washington National Insurance Company is in turn a

25  subsidiary of Conseco.  Conseco Services, Conseco Marketing and 40/86 are direct subsidiaries of

26  Conseco.  SAC ¶ 13.

27

28                                            **II.  ANALYSIS**

**United States District Court**
For the Northern District of California

**A.      Motion to Dismiss for Lack of Jurisdiction**

When the instant motion to dismiss was originally filed, all Moving Defendants moved for dismissal for lack of personal jurisdiction.  Conseco Marketing and Conseco Services subsequently dropped their objection to personal jurisdiction over them, however, Conseco and 40/86 continue to assert that plaintiff does not have personal jurisdiction over them.

When a defendant challenges the sufficiency of personal jurisdiction, the plaintiff bears the burden of establishing that the exercise of jurisdiction is proper.  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988).  When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of the jurisdictional facts to withstand the motion. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  In order to make a *prima facie* showing, plaintiff must allege facts which, if true, would be sufficient to establish personal jurisdiction. *Id.*  If not directly controverted, plaintiffs' version of the facts is taken as true for the purposes of the motion. *Id.*  Conflicts between the facts stated in the parties' affidavits must be resolved in plaintiff's favor during a prima facie jurisdictional analysis. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

**1.      RICO Statute**

In the SAC, plaintiff asserts that personal jurisdiction is proper under the provisions in the RICO statute authorizing nationwide service of process, 18 U.S.C. § 1965(b).  Section 1965(b) provides that in a civil action under RICO:

> in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

"Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).  However, "[t]he right to nationwide service in RICO suits is not unlimited" and "merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Id.  Butcher's Union* held that

under section 1965(b) "the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged coconspirators." *Id.* at 538.

Plaintiff contends that the Ninth Circuit *Butcher's Union* decision notwithstanding, the court need only find that it has personal jurisdiction over one of the alleged participants in the alleged multidistrict conspiracy in order to exercise nationwide jurisdiction under section 1965(b).  He contends that under the facts of *Butcher's Union*, the court found only that the defendants had alleged four separate conspiracies rather than one conspiracy in order to determine that section 1965(b) did not confer jurisdiction – the court did not actually reach the question of whether there was "no other district in which a court will have personal jurisdiction over all of the alleged coconspirators."

Pointing out the fact that *Butcher's Union* was decided in 1986, plaintiff cites to more recent cases to argue that the Ninth Circuit's "no other district" requirement for nationwide service is not justified.  Most persuasive is *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006), in which the Tenth Circuit reviewed a case in which the Kansas district court had determined it did not have personal jurisdiction over all defendants under section 1965(b) because all defendants were subject to suit in another venue, Pennsylvania.  The Tenth Circuit reversed the district court, holding that "the 'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum." *Id.* at 1232.  In so holding, the court stated, "we disagree with the Ninth Circuit, which reached the contrary conclusion by inadequately considering the congressional intent underlying RICO and by ignoring federal antitrust legislation." *Id.*

Although the Tenth Circuit's reasoning in *Cory* that the RICO statute permits nationwide service of process where a court has personal jurisdiction over one of the alleged co-conspirators in a nationwide conspiracy is persuasive, the court has an obligation to apply Ninth Circuit precedent which has been followed within the circuit.  *See, e.g., Rocawear Licensing LLC v. Pacesetter Apparel Group*, 2007 WL 5289737 *5 (C.D. Cal 2007).  Plaintiff's argument that *Butcher's Union* did not reach the question of whether a RICO claim could be brought in any district having jurisdiction over any defendant if there was another district which has jurisdiction over all the

defendants is refuted by the language in *Butcher's Union*. Therefore, the court concludes that jurisdiction over Conseco and 40/86 cannot be based upon Section 165(b). Even if jurisdiction is not available under this statute, there are other potential bases for jurisdiction that must be analyzed.

### 2.   Specific Jurisdiction

In the Ninth Circuit, specific jurisdiction is analyzed under a three-prong test:  (1) the defendant must purposefully direct its activities or consummate some transaction with the forum state or a resident of the forum state, (2) the claim alleged is one that arises out of or relates to the defendant's forum contacts, and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of establishing the first and second prongs, after which the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).  The first prong requires purposeful availment.  This prong may be satisfied by showing purposeful availment of the privilege of doing business in the forum on the part of the defendant, purposeful direction by the defendant of activities at the forum, or a combination thereof.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Plaintiff contends that the court has personal jurisdiction over Conseco and 40/86 by virtue of their relationships with CIC.  It does not appear to be disputed that Conseco is the grandparent of CIC – Conseco is the parent of Washington National Insurance Company which is the parent of CIC.  It is also undisputed that Conseco is the parent of 40/86.  The parent-subsidiary relationship itself is not sufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001)).  An exception to this general rule occurs when the subsidiary is the alter ego or agent of the parent.  *See Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) ("'if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation'") (quoting *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996)).

United States District Court
For the Northern District of California

### a.    Alter Ego

To establish that the subsidiary is the alter ego of the parent corporation, the plaintiffs "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'"  *Harris Rutsky*, 328 F.3d at 1134 (quoting *Unocal*, 248 F.3d at 926).

Plaintiff asserts that CIC is the alter ego of Conseco such that CIC's contacts should be imputed to Conseco.  This argument has little merit.  Plaintiff alleges that Conseco is the grandparent of CIC – Conseco is the parent of Washington National Insurance Company which is the parent of CIC – but that "the evidence shows that all of the defendants operated together as a single business entity known publicly as 'Conseco'" and because Conseco "principally relied upon [CIC] to market and distribute Conseco deferred annuity products."  Opp'n at 9.  In support of this argument, plaintiff points to the Annual Report, Form 10-K filed by Conseco on March 28, 2008, which lists the three primary operating segments of Conseco as: Banker's Life, Colonial Penn and CIC.  *See* Declaration of Phong Tran ("Tran Decl."), Ex. 3.  This citation alone does not suggest that there is such unity of interest between CIC and Conseco that the separate personalities of those two companies should not be recognized.  As is clear from the Annual Report Conseco has a much broader base of interest and operations than CIC such that the imposition of personal jurisdiction based on an alter ego theory is inappropriate.

To bolster its alter ego argument, plaintiff also asserts that Conseco and CIC share the same headquarters address.  Tran Decl., Ex. 2, Dep. of Karl Kindig ("Kindig Dep.") at149:6-150:5; *id.* Ex. 5 at 3.  In addition, plaintiff alleges that several of the officers of Conseco are directors of CIC and of 40/86, providing the following examples:

| Officer | Position at Conseco | Position at CIC |
|---|---|---|
| Eugene Bullis | CFO | Director |
| Karl Kindig | Assistant Secretary | Secretary |
| Joseph Murphy | SVP and Treasurer | Treasurer |
| Christopher Nickele | EVP of Product Development | Director |

Tran Decl., Ex. 2 at 79:6-83:15; 89:14-98:8; 143:2-146:13.  However, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."  *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).  Accordingly, the sharing of officers and directors between the companies is not alone sufficient to demonstrate that Conseco is an alter ego of CIC.

Finally, plaintiff contends that Conseco's designated 30(b)(6) representative, Karl Kindig testified that Conseco plays an active role in directing annuity operations.  "Appropriate parental involvement includes: 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.'"  *Unocal*, 248 F.3d at 926 (citing *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).  By contrast, "[a]n alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations.  *Id.* (citing *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980)).  Conseco's role in CIC's operations is discussed in further detail below, but plaintiff has not submitted evidence of sufficient parental control of CIC's internal affairs or daily operations to satisfy the test for alter ego liability.

### b.    Agency

"The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'"  *Unocal*, 248 F.3d at 928 (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)).  Plaintiff asserts that the agency test is satisfied as to Conseco and 40/86 with respect to the sale of annuities by CIC.

The Conseco Annual Report for March 28, 2008 discussed above states that CIC is one of Conseco's "three primary operating segments." Tran Decl. Ex. 5 at 3.  Plaintiff alleges that Conseco and its direct and indirect subsidiaries including CIC and 40/86 are together known as the "Conseco Group."  He sets forth each of defendants' roles: Conseco "conducts business planning and financial reporting and analysis for members of the Conseco Group"; "Conseco Services provides Defendants with accounting, tax, marketing, actuarial services, asset management, legal, underwriting,

United States District Court
For the Northern District of California

1   policyholder services, regulatory compliance, data processing and other functional support services";

2   "Conseco Marketing provides administrative and marketing services to Defendants arising out of

3   their agent relationships"; and "40/86 Advisors, Inc. serves as the chair of the asset/liability

4   committee, which is responsible for, among other things, crediting CIC's interest rates and

5   monitoring its option hedging program for equity indexed annuities."  SAC ¶¶ 13-17.

6          As permitted on a motion to dismiss for lack of jurisdiction, plaintiff further presents

7   evidence that Conseco took a role in directing annuity operations.  For example, Karl Kindig

8   testified that Christoper Nikele, an executive vice president and chief actuary of Conseco, oversaw

9   product development and consulted with officers and employees of CIC regarding new annuity

10  products.  Kindig Dep. at 91:12-93:10.  Plaintiff also presents evidence that, in addition to sharing

11  officers, Conseco, the other Moving Defendants and CIC share the same administrative and

12  operational infrastructure, including the same network systems, accounting and human resources

13  departments.  Together, this evidence, however, does not establish an agency relationship between

14  Conseco and CIC.  Further, given that Conseco is essentially a holding company, the record does not

15  establish that CIC is engaged in activities that Conseco would perform itself.  *See Sonora Diamond*

16  *Corp. v. Superior Court*, 83 Cal.App. 4th 523, 543 (2000).

17          The nature of the control exercised by the parent over the subsidiary
18     necessary to put the subsidiary in an agency relationship with the parent must be over
       and above that to be expected as an incident of the parent's ownership of the
       subsidiary and must reflect the parent's purposeful disregard of the subsidiary's
19     independent corporate existence. The parent's general executive control over the
       subsidiary is not enough; rather there must be a strong showing beyond simply facts
20     evidencing the broad oversight typically indicated by the common ownership and
       common directorship present in a normal parent-subsidiary relationship. As a
21     practical matter, the parent must be shown to have moved beyond the establishment
       of general policy and direction for the subsidiary and in effect taken over
22     performance of the subsidiary's day-to-day operations in carrying out that policy.

23  *Id.* at 542 (internal citations and quotations omitted).

24          The evidence plaintiff presents with regard to Conseco Marketing, Conseco Services, and

25  40/86[3] with respect to shared operational facilities is the same as that presented with respect to the

26  Conseco/CIC relationship.  Further, 40/86 has investment advisory agreements with CIC, Conseco

27  _____

28  [3]  This evidence is in addition to the allegations set forth above regarding each Moving Defendant's
    role in marketing or providing other support for CIC's annuity sales activities.

1   and other entities affiliated with Conseco under which 40/86 manages these companies' assets.  With

2   respect to CIC, 40/86 invests the premium amounts paid by annuity purchasers.  These facts are

3   insufficient to show an agency relationship which gives rise to personal jurisdiction over 40/86.  It is

4   difficult to see how CIC could be an agent of 40/86 which would be necessary to impute CIC's acts

5   to 40/86 for jurisdictional purposes.  Further, the relationship between CIC and 40/86 does not have

6   the characteristics necessary to meet *Sonora Diamond* test.

7   **B.     Statute of Limitations**

8          Hansen filed his first complaint against CIC in 2005, but did not add claims against the

9   Moving Defendants until April 27, 2007 when he filed the SAC.  The parties first dispute whether

10  the claims against the Moving Defendants relate back to the original filing of the complaint.  Rule

11  15(c)(3) permits relation back if new defendants have had notice of the pending claims against them.

12  The court finds that plaintiff has presented sufficient facts to demonstrate that the Moving

13  Defendants are sufficiently related in heir business activities that they would have been on notice as

14  to which of plaintiff's claims involved allegations involving their aspect of the business.

15         All Moving Defendants contend that each of plaintiff's claims against them, which are

16  subject to a two-, three- or four-year statute of limitation, is time-barred.  First, Moving Defendants

17  assert that any applicable statute of limitations began running in 2002 when, as alleged by plaintiff, a

18  Wall Street Journal exposé "documented the abusive sales tactics of Broker's Choice [allegedly a

19  'long time top-producer for CIC'] directed at senior citizens."  SAC ¶ 25.  The court finds this

20  argument to be without merit.  There is no allegation that plaintiff ever read this exposé and, even

21  assuming he had, it is unclear how he would have inferred that the abusive sales tactics of Broker's

22  Choice toward senior citizens would be connected to the sale of the CIC annuity to him.

23         Moving Defendants also assert that any applicable statute of limitations began to run in 2000

24  when plaintiff purchased the CIC annuity.  Plaintiff, on the other hand, asserts that it did not begin to

25  run until 2004 when plaintiff sold the annuity, incurring substantial penalties for early surrender of

26  the annuity.  The court has previously considered this argument with respect to CIC and concluded

27  that the statute of limitations does not necessarily bar any of the claims against CIC.  Moving

28

ORDER RE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT—No. C-05-04726 RMW
MAG

1   Defendants do not present any new argument directed to the statute of limitations for this claim that

2   would convince the court to revisit this ruling.

3                                   **a.       Discovery Rule**

4            Plaintiff renews his argument that the statute of limitations should be tolled under the

5   discovery rule.  Generally, California law allows tolling of the statute of limitations under the

6   discovery rule; that is, "the statute of limitations does not begin to run until the plaintiff discovered

7   or had notice of all facts which are essential to the cause of action."  *Saliter v. Pierce Bros.*

8   *Mortuaries*, 81 Cal. App. 3d 292, 296 (1978).  The rationale behind this exception is that statutes of

9   limitations "should not be interpreted so as to bar a victim of wrongful conduct from asserting a

10  cause of action before he could reasonably be expected to discover its existence."  *Id.* at 297.  "In

11  order to invoke this special defense to the statute of limitations, the plaintiff must specifically plead

12  facts which show (1) the time and manner of discovery and (2) the inability to have made earlier

13  discovery despite reasonable diligence."  *Id.*  "Resolution of a statute of limitations defense normally

14  is a factual question for the trier of fact."  *City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th

15  575, 582 (1994).  However, "[m]ere conclusory assertions that delay in discovery was reasonable are

16  insufficient."  *Saliter*, 81 Cal. App. 3d at 297.

17           Plaintiff adequately invokes the discovery rule.  He alleges that material misrepresentations

18  about the risks inherent in his CIC annuity were made to him.  SAC ¶¶ 90, 95, 96, 101.  Defendants,

19  through the marketing material provided by Zehner, represented that the annuities provided the

20  benefits of the stock market without the downside risk, thus discouraging plaintiff from comparing

21  the performance of his investment with other available investments.  *Id.* at 90.  Plaintiff also alleges

22  that he was not told, nor had any way of knowing, that his annuity, sold and marketed as a "single

23  premium annuity" (for which plaintiff paid a single premium), had cash surrender values calculated

24  on a "flexible premium" model, which allegedly resulted in lower initial cash surrender values on the

25  annuity plaintiff purchased.  SAC ¶ 101.  According to plaintiff, this could not have been discovered

26  by a reasonable person until after the annuity had been sold and the penalties accrued.  Plaintiff

27  argues that disclosures were was drafted in indecipherable and opaque mathematical terms in the

28  materials provided.  The court agrees that these allegations are sufficient to warrant application of

ORDER RE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT—No. C-05-04726 RMW
MAG

1   the discovery rule.

2               **b.**      **Fraudulent Concealment**

3       Moving Defendants also challenge whether plaintiff has successfully invoked the fraudulent

4   concealment doctrine.  "A defendant's fraud in concealing a cause of action against him will toll the

5   statute of limitations, and that tolling will last as long as a plaintiff's reliance on the

6   misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 744

7   (2007).  "[T]he fraudulent concealment by the defendant of a cause of action tolls the relevant statute

8   of limitations, which does not begin to run until the aggrieved party discovers the existence of the

9   cause of action." *Community Case v. Boatwright*, 124 Cal. App. 3d 888, 899 (1981).  However,

10   "[w]hen a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and

11   proof is required as in fraud cases:  the plaintiff must show (1) the substantive elements of fraud, and

12   (2) an excuse for late discovery of the facts." *Id.* at 900 (citation omitted).

13       The elements of fraud are "(a) misrepresentation (false representation, concealment, or

14   nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;

15   (d) justifiable reliance; and (e) resulting damage." *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184

16   (2006).  "As for the belated discovery, the complaint must allege (1) when the fraud was discovered;

17   (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for

18   failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on

19   inquiry." *Boatwright*, 124 Cal. App. 3d at 900.

20       In ruling on CIC's earlier motion to dismiss, the court held that plaintiff's allegations

21   regarding fraudulent concealment were sufficient to support tolling the statute of limitations under

22   the fraudulent concealment doctrine.  Moving Defendants' additional argument is that plaintiff's

23   complaint merely refers to defendants as an undifferentiated mass and does not provide sufficient

24   notice as to what particular statements are allegedly false or what knowledge any of the defendants

25   may have had.  It is true that plaintiff's factual allegations regarding the undisclosed and false

26   statements about the CIC annuity's performance, costs, teaser rates and subsidies, cash surrender

27   values, liquidity and investment safety are attributed generally to "defendants" rather than allocated

28   individually to any particular Moving Defendant. *See* SAC ¶¶ 52-85.  Nevertheless, plaintiff's

1   complaint also sets forth allegations detailing each of the Moving Defendant's alleged role in the

2   "Conseco Group" and their involvement with one another.  *Id.* ¶¶ 14 (Conseco "conducts business

3   planning and financial reporting and analysis for members of the Conseco Group"); 16 ("Conseco

4   Services provides Defendants with accounting, tax, marketing, actuarial services, asset management,

5   legal, underwriting, policyholder services, regulatory compliance, data processing and other

6   functional support services.  Conseco Marketing provides administrative and marketing services to

7   Defendants arising out of their agent relationships"); 17 ("40/86 Advisors, Inc. serves as the chair of

8   the asset/liability committee, which is responsible for, among other things, crediting CIC's interest

9   rates and monitoring its option hedging program for equity indexed annuities."). Viewing plaintiff's

10  allegations pertaining to the misrepresentations and omissions in light of the allegations regarding

11  the Moving Defendants' roles, the court finds that plaintiff has alleged sufficient facts with sufficient

12  particularity to invoke the fraudulent concealment doctrine.

13  **C.      Arguments for Dismissal Specific Claims for Relief**

14          Moving Defendants also challenge three of plaintiff's claims under Rule 12(b)(6): plaintiff's

15  RICO claim, breach of the duty of good faith and fair dealing claim and unjust enrichment claim

16          **1.      RICO**

17          Plaintiff's first and second causes of action are for violations of the Rackeeer Influenced and

18  Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c) and (d).  "The elements of a

19  civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of

20  racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or

21  property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.

22  2005).

23          Moving Defendants appear to challenge plaintiff's RICO claim on the grounds the plaintiff

24  has failed to plead an enterprise because the enterprise allegations state only that each Moving

25  Defendant was engaged in its own business operations.  In *Odom v. Microsoft Corp.*, 486 F.3d 541

26  (9th Cir. 2006), the Ninth Circuit expressly overruled prior caselaw and held that "an

27  associated-in-fact enterprise under RICO does not require any particular organizational structure,

28  separate or otherwise."  *Odom*, 486 F.3d at 550-51.  In *Odom*, the Ninth Circuit clarified that courts

United States District Court
For the Northern District of California

should return to the principles articulated by the Supreme Court in *United States v. Turkette*, 452 U.S. 576 (1981), to determine whether a plaintiff alleges the existence of an enterprise. *Odom*, 486 F.3d at 552 (an associated-in-fact enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct," for which "a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'").

As discussed above, plaintiff has alleged a direct and indirect subsidiary relationship between Conseco, CIC, Conseco Marketing, Conseco Services and 40/86, thereby successfully alleging an ongoing organization. Plaintiff has also made allegations regarding how the Conseco Group operates to facilitate defendants' alleged fraudulent scheme, alleging a common purpose, and that the alleged improprieties regarding the sale of annuities to seniors continues over time satisfying the requirement that plaintiff make sufficient allegations that the enterprise is a continuing unit. SAC ¶¶ 12-18, 22-38, 49-51, 119-124.

### 2.     Breach of the Duty of Good Faith and Fair Dealing

Plaintiff asserts that Moving Defendants are liable for breach of the duty of good faith and fair dealing under Cal. Ins. Code § 785 and Cal. Ins. Code § 332. Cal Ins. Code § 785 provides "All insurers, brokers, agents, and others engaged in the transaction of insurance owe a prospective insured who is 65 years of age or older, a duty of honesty, good faith, and fair dealing." Cal Ins. Code § 332 provides "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

Plaintiff argues that the language of Cal. Ins. Code § 785 "others engaged in the transaction of insurance" is broad enough to include Moving Defendants because they "clearly engage in the transaction of insurance." This allegation along with the description in the complaint as to the business activities of the defendants is sufficient to get by a motion to dismiss. Because Moving Defendants' argument that plaintiff cannot state a claim for unjust enrichment is based primarily on the argument that there is no relationship sufficient to sustain such a claim, the court declines to dismiss plaintiff's unjust enrichment claim for the same reason. Plaintiff does not, however, state a

1    claim under Cal. Ins. Code § 332, as plaintiff has not shown that any of the Moving Defendants was

2    a party to the annuity.

3                                              **III.  ORDER**

4          For the foregoing reasons, Moving Defendants' motion to dismiss Conseco and 40/86 for

5    lack of personal jurisdiction is granted.  Moving Defendants' motion to dismiss for failure to state a

6    claim is denied as to all claims except plaintiff's claims for breach of fiduciary duty and aiding and

7    abetting breach of fiduciary duty.  Those claims are dismissed with prejudice.

8

9    DATED:         9/30/2008
                                                RONALD M. WHYTE
10                                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Stephen R. Basser | sbasser@barrack.com |
| John L. Haeussler | jhaeussler@barrack.com |
| Rachel Lynn Jensen | rachelj@csgrr.com,e_file_sd@csgrr.com |
| Steven M. Jodlowski | sjodlowski@csgrr.com |
| Mark L Karasik | Mark.L.Karasik@bakernet.com |
| Theodore J. Pintar | TedP@csgrr.com,e_file_sd@csgrr.com |
| John J. Stoia , Jr | jstoia@csgrr.com |
| Phong L. Tran | ptran@csgrr.com,csindac@csgrr.com |
| Ingrid M. Evans | ievans@publiclawgroup.com |
| Howard D. Finkelstein | fk@classactionlaw.com |
| Andrew S. Friedman | afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com |

**Counsel for Defendant:**

| | |
|---|---|
| Thomas A. Doyle | Thomas.A.Doyle@bakernet.com |
| James J Dries | James.J.Dries@bakernet.com |
| Tod L. Gamlen | tod.l.gamlen@bakernet.com |
| David G. Wix | David.G.Wix@BakerNet.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   9/30/2008            _____

                                                      TSF
                                            **Chambers of Judge Whyte**

United States District Court
For the Northern District of California