ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN J. STOIA, JR. (141757)
THEODORE J. PINTAR (131372)
PHONG L. TRAN (204961)
STEVEN M. JODLOWSKI (239074)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jstoia@rgrdlaw.com
tpintar@rgrdlaw.com
ptran@rgrdlaw.com
rjensen@rgrdlaw.com
sjodlowski@rgrdlaw.com

BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619/230-0800
619/230-1874 (fax)
sbasser@barrack.com
sward@barrack.com

Interim Co-Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re CONSECO INSURANCE CO. ANNUITY MARKETING & SALES PRACTICES LITIG. | No. C-05-04726-RMW |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL |
| ALL ACTIONS. | |

JUDGE:   Hon. Ronald M. Whyte
DATE:    October 8, 2010
TIME:    9:00 a.m.
CTRM:   6 – 4th Floor

**REDACTED**

526552_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................1

II.  STATEMENT OF COMMON FACTS........................................................3

    A.   Conseco Requires That Its Sales Agents Use Standardized Sales Materials from Which They Cannot Deviate........................................................3

    B.   Conseco's Standardized Sales Materials and Contracts Misrepresent and Fail to Disclose Material, Adverse Facts About Its Annuities...............................5

        1.   Conseco Uniformly Misrepresents and Otherwise Conceals Its Annuities' Sales Charges and High Commission Costs ...........................6

        2.   Conseco Misrepresents the First Year "Premium Credit" and "Waiver" of the Index Margin ...................................................8

    C.   The RICO Enterprise ..........................................................10

III. THE REQUIREMENTS OF RULE 23(a) HAVE BEEN MET .......................11

    A.   Numerosity...................................................................11

    B.   Commonality.................................................................11

    C.   Typicality ...................................................................12

    D.   Adequacy and the Appointment of Class Counsel ................................13

IV. RULE 23(b)(3) IS SATISFIED FOR THE FEDERAL RICO AND CALIFORNIA STATE LAW CLASSES..................................................14

    A.   Predominance Is Satisfied.....................................................14

        1.   Conseco's Uniform Misrepresentations to the Classes Establish Predominance..............................................................14

        2.   Causation Can Be Established on a Classwide Basis ...............................17

            a.   Contemporaneous Signed Statements by Class Members Are Direct Evidence of Causation ....................................17

            b.   Causation Can Be Inferred Because Plaintiffs' Injury Flows Directly from the Misrepresentations and Since Conseco's Misrepresentations Concern the Fundamental Nature of Its Annuity Products ...................................................19

        3.   Damages Will Be Proven Through Common Classwide Evidence..........20

        4.   Common Issues Predominate in the Proof of Plaintiffs' California Statutory and Common Law Claims......................................20

**Page**

B.    The Superiority of Class Action Litigation Is Established Here...........................23

V.    CONCLUSION.................................................................................................................25

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT
OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bastian v. Petren Res. Corp.*,
699 F. Supp. 161 (N.D. Ill. 1998) ....................................................................... 19

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ............................................................................. 20

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639, 128 S. Ct. 2131 (2008) ................................................................ 17

*Chisholm v. TranSouth Fin. Corp.*,
194 F.R.D. 538 (E.D. Va 2000) .......................................................................... 19

*Clark v. Nat'l W. Life Ins. Co.*,
BC321681 (Cal. Super. Ct., Los Angeles Cty., Feb. 28, 2007) ...................... 3, 21, 22

*Dukes v. Wal-Mart*,
509 F.3d 1168 (9th Cir. Cal. 2007) .................................................................... 23

*Dukes v. Wal-Mart Stores, Inc.*,
Nos. 04-16688, 04-16720, 2010 U.S. App. LEXIS 8576
(9th Cir. Apr. 26, 2010) .................................................................................... 11

*Gentry v. Superior Court*,
42 Cal. 4th 443 (2007) ................................................................................. 14, 21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................................................

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
No. C-05-04726 RMW, 2008 U.S. Dist. LEXIS 111497
(N.D. Cal. Sept. 30, 2008) ................................................................................ 10

*In re First Alliance Mortgage Company*,
471 F.3d 977 (9th Cir. 2006) ...................................................................... 16, 17, 23

*In re Tobacco II*,
46 Cal. 4th 298 (2009) ...................................................................................... 22

*Iorio v. Asset Mktg. Inc.*,
No. 05CV633 IEG (CAB), 2006 U.S. Dist. LEXIS 94948
(S.D. Cal. July 26, 2006) ............................................................................. passim

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ........................................................................... 14

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT
OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- iii -

|  | Page |
|---|---|

*Lowdermilk v. U.S. Bank Nat'l Ass'n,*
479 F.3d 994 (9th Cir. 2007) ........................................................................11

*Maddox v. S. Eng'r Co.,*
500 S.E.2d 591 (Ga. Ct. App. 1998) .............................................................19

*Mass. Mut. Life Ins. Co. v. Superior Court,*
97 Cal. App. 4th 1282 (2002) ........................................................................22

*McCullough v. Suter,*
757 F.2d 142 (7th Cir. 1985) .........................................................................20

*McKell v. Washington Mut.,*
142 Cal. App. 4th 1457 (2006) ......................................................................21

*McPhail v. First Command Fin. Planning, Inc.,*
247 F.R.D. 598 (S.D. Cal. 2007) .............................................................*passim*

*Negrete v. Allianz Life Ins. Co.,*
238 F.R.D. 482 (C.D. Cal. 2006) ............................................................*passim*

*Odom v. Microsoft Corp.,*
486 F.3d 541 (9th Cir. 2007) .........................................................................10

*Paulus v. Bob Lynch Ford, Inc.,*
139 Cal. App. 4th 659 (2006) ........................................................................21

*People ex rel. Gallegos v. Pac. Lumber Co.,*
158 Cal. App. 4th 950 (2008), *modified,* 208 Cal. App. LEXIS 167
(Cal. App. 1st Dist. Feb. 1, 2008) ..................................................................21

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797, 105 S. Ct. 2965 (1985).............................................................24

*Poulos v. Caesars World, Inc.,*
379 F.3d 654 (9th Cir. 2004) .....................................................................17, 19

*Rohlfing v. Manor Care, Inc.,*
172 F.R.D. 330 (N.D. Ill. 1997).....................................................................18

*Vasquez v. Superior Court,*
4 Cal. 3d 800 (1971) ................................................................................21, 22

*Wiener v. Dannon Co.,*
255 F.R.D. 658 (C.D. Cal. 2009).....................................................................24

526552_1

PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION, APPOINTMENT
OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- iv -

Page

*Weiss v. First Unum Life Ins. Co.*,
    482 F.3d 254 (3d Cir. 2007)..........................................................................20

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    564 F.3d 1087 (9th Cir. 2010) ...............................................................*passim*

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...................................................................23

## STATUTES, RULES AND REGULATIONS

18 U.S.C.
    §1962(b)-(d)................................................................................................1

California Business & Professions Code
    §17200.........................................................................1, 20, 21, 22
    §17500.............................................................................1, 21, 22

California Civil Code
    §1573.........................................................................................22
    §1575.........................................................................................22
    §1709.........................................................................................22
    §1750.........................................................................................22
    §1710.............................................................................1, 21, 22

California Corporations Code
    §25230.......................................................................................22
    §25235.......................................................................................22

California Insurance Code
    §330..........................................................................................22
    §334..........................................................................................22
    §762..........................................................................................22
    §780..........................................................................................22
    §781..........................................................................................22
    §785..........................................................................................22
    §787(a).......................................................................................22
    §787(i).......................................................................................22
    §787(k).......................................................................................22
    §789.8........................................................................................22
    §10127.10.....................................................................................22
    §10127.13.....................................................................................22

526552_1

PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION, APPOINTMENT
OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- v -

|  | Page |
|---|---|
| California Penal Code | |
| §368 | 22 |
| §484 | 22 |
| California Welfare & Institutions Code | |
| §15600 | 1, 21 |
| §15610.30 | 22 |
| §15610 | 23 |
| Federal Rules of Civil Procdure | |
| Rule 23 | 3, 11 |
| Rule 23(a) | 11, 14 |
| Rule 23(a)(1) | 11 |
| Rule 23(a)(3) | 12 |
| Rule 23(a)(4) | 13 |
| Rule 23(b)(3) | 12, 14, 23 |
| Rule 23(b)(3)(B) | 24 |
| Rule 23(b)(3)(C) | 24 |
| Rule 23(b)(3)(D) | 23 |
| Rule 23(g) | 1, 14 |

## SECONDARY AUTHORITIES

2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2008)
§4.31 ............................................................................................. 24

Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law*
§4.02[2][a] (2003) ........................................................................... 20

526552_1

PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION, APPOINTMENT
OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- vi -

**TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on October 8, 2010 at 9:00 a.m. in Courtroom 6, Fourth Floor, of the above-entitled Court, located at 280 South First Street, San Jose, California, plaintiff Robert H. Hansen will move for an order certifying the following Classes and appointment as Class representative:[1]

> **The Nationwide RICO Class**:  All persons who, within the applicable statute of limitations and while 65 years of age or older, purchased one or more Conseco Insurance Company ("Conseco") deferred annuities either directly, or through the surrender (in whole or part) of an existing life insurance policy, annuity, or other investment, or by borrowing against an existing life insurance policy.

> **The California Class**:  All California residents who, within the applicable statute of limitations and while 65 years of age or older, purchased one or more Conseco deferred annuities either directly, or through the surrender (in whole or part) of an existing life insurance policy, annuity, or other investment, or by borrowing against an existing life insurance policy.

Additionally, pursuant to Federal Rules of Civil Procedure, Rule 23(g), plaintiff moves for an order appointing the law firms of Robbins Geller Rudman & Dowd, LLP and Barrack Rodos & Bacine as class counsel in this action.

## I.    INTRODUCTION

Conseco, along with its corporate affiliates, Conseco Services, LLC, and Conseco Marketing, LLC (collectively "Defendants"), conspired with a network of sales agents to sell poorly-performing deferred annuities to seniors citizens, using carefully-crafted sales materials that uniformly misrepresented the annuities' true costs and other adverse features.  Plaintiff now moves for class certification as the evidence demonstrates that Conseco subjected all Class members to the same false and misleading statements.  Conseco in fact required all prospective purchasers to sign standardized applications and "Benefit Summary and Disclosure" forms, acknowledging that they received and reviewed the sales materials presented to them.

---

[1]     Plaintiff seeks certification of the following causes of action set forth in the Second Amended Class Action Complaint, filed April 27, 2007: (i) Counts I & II, Violations of RICO 18 U.S.C. §1962(b)-(d); (ii) Count III, Financial Elder Abuse, Cal. Welf. & Inst. Code §15600, *et seq.*; (iii) Count IV, Violation of Cal. Bus. & Prof. Code §17200, *et seq.*; (iv) Count V, Violation of Cal. Bus. & Prof. Code §17500, *et seq.*; (v) Count VIII, Fraudulent Concealment, Cal. Civ. Code §1710, *et seq.*; and (vi) Count X, Unjust Enrichment and Imposition of the Constructive Test.

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- 1 -

1    Conseco's sales materials and annuity contracts are incredibly opaque and misleading,
2  making it impossible for average consumers, let alone elderly consumers, to understand its deferred
3  annuity products.  Indeed, Conseco uniformly misrepresents and otherwise fails to disclose in its
4  written sales and policy forms the hefty commissions it pays to agents.  These hidden agent
5  commissions, as well as other sales costs, serve to gut the annuities' value and performance, because
6  Conseco recovers those costs by manipulating the annuities' "product spread" – thereby reducing the
7  amount ultimately credited to purchasers.  None of Conseco's sales materials disclose the existence
8  of agent commissions and other costs embedded in its annuity products; nor do they disclose how
9  Conseco uses the product spread to recover those costs from Class members.

10    Conseco further misrepresents the so-called "bonus" it offers on its annuities in the form of
11  either a "premium credit" or "waiver" of the index margin.  Because Conseco recoups the costs of
12  the premium credit and index margin waiver through the product spread – thereby passing such costs
13  on to Class members – those features fail to provide any real value.  Again, none of this is disclosed
14  to Class members.

15    Certification of both Classes is appropriate because this case involves a common course of
16  conduct arising from Conseco's uniform sales materials, from which Conseco's sales agents could not
17  deviate.  Recently, in a very similar case, the Ninth Circuit reversed the denial of class certification and
18  certified a Hawaii class of purchasers of Midland National deferred annuities.  *Yokoyama v. Midland
19  Nat'l Life Ins. Co.*, 564 F.3d 1087 (9th Cir. 2010).  The Ninth Circuit found that plaintiffs' claims were
20  based on "standardized written materials given to all plaintiffs" and therefore "[p]laintiffs' case will
21  not require the fact-finder to parse what oral representations each broker made to each plaintiff." *Id.* at
22  1093.  The same reasoning applies here.

23    A number of district courts have also certified classes involving very similar, if not identical,
24  annuity sales claims.  *See Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 496 (C.D. Cal. 2006)
25  (certifying nationwide RICO class and California class of senior purchasers of Allianz annuities);
26  *Iorio v. Asset Mktg. Inc.*, No. 05CV633 IEG (CAB), 2006 U.S. Dist. LEXIS 94948, at *21 (S.D. Cal.
27  July 26, 2006) (certifying statewide California class of senior purchasers of Allianz annuities);
28  Exs. 1, 2, *American Investors Cases II*, JCCP No. 4441, Order Granting Class Certification and

1  Notice of Pendency of Class Action (Cal. Sup. Ct. San Francisco, Nov. 21, 2008) (certifying

2  California class of senior purchasers of American Equity annuities); Ex. 14, *Clark v. Nat'l W. Life*

3  *Ins. Co.*, BC321681 (Cal. Super. Ct., Los Angeles Cty., Feb. 28, 2007) (certifying California class of

4  senior purchasers of National Western annuities).[2]

5       This case fits squarely within well-established case authority certifying claims based on uniform

6  misrepresentations utilized in the sale of deferred annuities. Plaintiff here can and will demonstrate at

7  trial, through evidence common to the Classes, that Conseco and its corporate affiliates orchestrated an

8  overarching scheme targeting seniors in which it uniformly misrepresented certain annuity features such

9  as the premium credit and index margin waiver and concealed the annuities' commission and sales

10  costs. The common evidence includes Conseco's standardized sales materials and contracts, internal

11  company documents, the testimony of its senior executives, the declaration of the Class representative

12  Robert Hansen, and the declaration of plaintiff's expert actuary, Jeffrey K. Dellinger, FSA, MAAA.

13  Based on this common, classwide evidence, this case plainly meets the requirements of Rule 23.

14  **II.   STATEMENT OF COMMON FACTS**

15       The predominant legal and factual issues in this litigation, common to plaintiff and all Class

16  members, include: (a) Conseco and its co-conspirators' use of standardized written sales materials to

17  defraud senior investors, (b) Conseco's common misrepresentations and omissions concerning the

18  key features of its deferred annuities; and (c) the existence, composition and common purpose of an

19  ongoing RICO Enterprise and conspiracy.

20      **A.   Conseco Requires That Its Sales Agents Use Standardized Sales
       Materials from Which They Cannot Deviate**

21
22       Since the mid-1990's, Conseco targeted senior citizens in the sale of deferred annuities

   because that is "where the money is." Ex. 3, Hilbert Article, "Senior Market Focus of Conseco

23  Deal"; Ex. 4, CIC00064556-60 (██████████████████████████████████████

24  ████); Ex. 5, CIC00064467-68. In its internal pricing documents, Conseco ███████████

25

26  [2]   All "Ex." And "Exs." Are the exhibits attached to the Declaration of Phong L. Tran in
   Support of Plaintiff's Motion for Class Certification, Appointment of Class Representative and
27  Appointment of Class Counsel, filed concurrently.

28

██████████████████████████████████████████████████████

████████████████████████████████. Ex. 6, CIC00058246-82 at 58271; *see also*

Ex. 7, CIC00058714-17 (███████████████████████).

Conseco utilizes a network of marketing organizations and affiliated sales agents to capture the lucrative senior market. Ex. 9, Kindig Depo. at 109:7-9; 120:4-121:2. Conseco strictly controls the manner in which its annuity products are marketed, presented and sold and therefore does not allow agents to deviate from Company-approved standardized sales and product materials and its approved sales process. Ex. 10, CIC00265390-98 at 94 (██████████████████████████████

████). These standardized materials include the annuity application, product brochure, and a "Benefit Summary and Disclosure" form. Ex. 11, CIC00000030 (executed Benefit Summary and Disclosure Form for plaintiff Hansen); Ex. 12, CIC00013680-87 (Agent Guide for Conseco Choice equity-indexed fixed annuity).

Conseco will not issue any annuity contract unless the Benefit Summary and Disclosure Form and application are *signed by both the agent and the purchaser*. Ex. 13, Ardizone Depo. at 49:25-50:5; 81:16-23 (explaining that Conseco refuses to process the application until the agent obtains the fully executed paperwork). Conseco in fact requires each agent to certify on the disclosure form "*that I [the agent] have explained the contents of the [disclosure] to the applicant*" and "*have not made statements contradicting those in this document.*"[3] Ex. 11, CIC00000030 (executed disclosure form for Hansen); Ex. 13, Ardizone Depo. at 80:5-81:1 (use of disclosure forms was mandatory for *all* Conseco annuity products). Shawn Ardizone, Director of Field Sales Support, confirmed at deposition that agents are forbidden to make oral representations that differ from Conseco's disclosure form and other sales materials:

> Q    Would you say that one of the reasons for the disclosure form was also to make sure that the agent stuck closely with the information that was provided in the disclosure form in relaying it to the customer?
>
> A    Correct.          *     *     *

---

[3]    Unless otherwise noted, citations are omitted and emphasis is added.

Q      Was one of the purposes of having them do this – having the agents do this so that they confirm they were not making oral representations that were different than what Conseco felt were the important representations to make to the customer?

A      Correct.

Ex. 13, Ardizone Depo. at 82:24-83:24; 85:17-86:5.

Conseco likewise requires all prospective purchasers to sign the disclosure form, attesting that they "read" and "understand" the sales materials presented to them. Ex. 11, CIC00000030.[4] Conseco implemented this policy so that "the customer [would] go through and understand the product." Ex. 13, Ardizone Depo. at 83:3-11; 85:4-6 (disclosure form "is designed to describe the features of the product").

Conseco therefore relies exclusively on these standardized written sales materials – from which agents may not deviate – to sell its deferred annuities – and to ensure that all Class members were subject to the same misrepresentations and omissions, as discussed below.

**B.      Conseco's Standardized Sales Materials and Contracts Misrepresent and Fail to Disclose Material, Adverse Facts About Its Annuities**

To appeal to seniors, Conseco portrays its deferred annuities as advantageous retirement investment products that provide competitive, tax-advantaged returns and "[m]arket-like growth," without any "downside" risk. Ex. 27, CIC00013697-98. Conseco also promises to increase the value of its annuities at the time of purchase by offering a "premium credit" on its fixed interest annuities, or by "waiving" the index margin on its EIAs. *Id.* at CIC00013700; Dellinger Decl., ¶¶37-38. But, as discussed below, the representations in Conseco's written sales materials and contracts are misleading because they misstate how the annuities actually work and conceal their adverse features, particularly their high embedded costs and poor performance.

---

[4]      *See also* Exs. 15-26, CIC000025238-43, CIC00059255-59, CIC00121930-35, CIC00063868-72, CIC00018050-53, CIC00056533-34, CIC00192052, CIC00010252-55, CIC00019764-68, CIC00014579-83, CIC00116116-21, CIC00017563.

### 1. Conseco Uniformly Misrepresents and Otherwise Conceals Its Annuities' Sales Charges and High Commission Costs

First, Conseco deceives Class members by misrepresenting and otherwise failing to disclose in its standardized sales forms and contracts that its annuities are encumbered by significant sales loads, including substantial commission costs and other acquisition expenses. Ex. 28, Turner Depo. at 47:20-48:5 (████████████████████). *Id.* at 23:7-11 (████████████████████ ████████████████████). These hidden costs, in turn, substantially impair the value and performance of the annuities sold to Class members. Dellinger Decl., ¶¶34-35.

Conseco's agent commissions account for the largest component of its sales costs. Dellinger Decl., ¶26. On average, Conseco pays agents an ████ commission. And, ████████████ ████████████████████. Dellinger Decl., ¶¶25-26. Conseco in fact represents to sales agents that it offers the "██████████" on its deferred annuity products. Ex. 29, CIC00025346; Ex. 30, CIC00051255-60 (████████ ████████) (emphasis in original); Ex. 31, CIC00209171 (████████████ ████████); Ex. 30, CIC0051255-60; Ex. 32, CIC00021903 (████████ ████████████).

Purchasers of Conseco annuities must ultimately pay for these commissions. Conseco treats agent commissions as ████████████████████ ████████ – the period in which the annuity is subject to surrender charges. The product spread is the difference between ████████████████████ ████████. Ex. 28, Turner Depo. at 14:4-17; 23:7-11; 25:21-26; Dellinger Decl., ¶¶18-20, 25, 32-36. Conseco therefore recovers ████████████████ ████████████████████ ████████. Dellinger Decl., ¶¶34-36. Gregory Turner, Conseco's Vice-President of Life and Annuity Product Management and actuarial designee, confirmed that ████████████ ████████████████████.
████████████████████
████████

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

Ex. 28, Turner Depo. at 45:17-46:23.

Conseco charges a target product spread ███████████████████████, which it keeps for itself by deducting the spread amount from the returns on the investments backing its deferred annuity products. Ex. 33, CIC-MLLC-JUR 0014175-206; Dellinger Decl., ¶¶18, 32. The spread is intended to cover ████████████████████████████████████ ███████████. Ex. 28, Turner Depo. at 23:7-11; Dellinger Decl., ¶18. To achieve its target product spread, Conseco routinely adjusts the credited interest rates, thereby lowering the amounts credited to the annuities. Ex. 34, CIC00062662 (██████████████████████o); Ex. 35, CIC00055248 (████████████████████). Thus, Conseco effectively treats agent commissions and other acquisition expenses as sales charges to be paid by the purchaser. Ex. 28, Turner Depo. at 23:7-11.

Conseco uniformly misrepresents and fails to disclose agent commissions, as well as the fact that it recoups the cost of such commissions through the product spread. Ex. 27, CIC00013696-707. Turner acknowledged ████████████████████████████████████████ ████████████. Ex. 28, Turner Depo. at 48:14-23.

Conseco's failure to disclose its commissions and other acquisition charges and the fact that those costs come out of the purchaser's pocket raise issues common to every Class member.

### 2. Conseco Misrepresents the First Year "Premium Credit" and "Waiver" of the Index Margin

Conseco also deceives Class members by promising a first year "additional 3% premium credit" on a number of its fixed interest annuities. Ex. 27, CIC13700. Conseco similarly promises to "waive" the first year index margin on certain of its EIAs. *Id.* Conseco uses the lure of the first year premium credit and index margin waiver to dupe investors into believing they will receive an added bonus on its annuities at the time of purchase. *Id.* However, the premium credit and index margin waiver are nothing more than deceptive teaser rates that fail to provide any real enhancement to the annuities' value and performance. Ex. 28, Turner Depo. at 50:1-10, 50:25-51:6, 53:7-11; Dellinger Decl., ¶¶37-46.

Conseco's promise of a first year premium credit is false and misleading because, just like agent commissions, Conseco ████████████████████████████████████████████. The premium credit is therefore illusory, as Conseco ████████████████████████████ ████████████████████████████. Dellinger Decl., ¶¶39-41. Turner confirmed at deposition that ████████████████████████████████████████████████████████████ ████████████████████████████. Ex. 28, Turner Depo. at 50:1-10, 50:25-51:6, 53:7-11. Purchasers of premium credit annuities therefore receive a significantly lower credited interest rate than purchasers of products without the premium credit. Turner again confirmed this:



Ex. 28, Turner Depo. at 50:1-10; Dellinger Decl., ¶41, 45.

Conseco's index margin "waiver" is misleading and illusory for the same reason. The index margin is one of the policy "levers" Conseco uses to control the amount credited on its EIA

products.[5]  Ex. 28, Turner Depo. at 21:24-23:10.  The index margin, which is reflected as a percentage, is an additional amount (along with the spread) that Conseco deducts from its investment yield, leaving the remaining amount to be credited to purchasers. [6]  Conseco uniformly represents in its sales materials that the index margin will be waived for the first year of the annuity contract, providing purchasers with a higher credited interest amount.  This is false and misleading because Conseco increases the spread in subsequent contract years to recover the additional amount credited to purchasers from the index margin waiver in the first year.  Dellinger Decl., ¶¶41, 46.  Turner again confirmed this:



Ex. 28, Turner Depo. at 41: 24-42:14.

Accordingly, neither the index margin waiver nor the premium credit provide any real value or benefit, as the costs of both are charged against purchasers through lower crediting rates. Dellinger Decl., ¶¶42-46.  And, just like Conseco's hidden commissions, the Company uniformly fails to disclose the costs associated with the index margin waiver and premium credit or their

---

[5]     Other product levers used by Conseco to manage its EIA products include index the cap and participation rate.  Ex. 28, Turner Depo. at 21:24-22:10.

[6]     Mr. Hansen purchased a Conseco Choice annuity, which had an index margin of 15%.

impact on the product spread and crediting rate.  Ex. 28, Turner Depo. at 53:12-19 (███████
████████████████████████████████████████████████████).

## C.     The RICO Enterprise

The RICO Enterprise here is comprised of Conseco, Conseco Services, Conseco Marketing, and their tightly-controlled network of marketing organizations and sales agents who target senior citizens in the sale of deferred annuities.  Complaint, ¶¶105-116.  In its September 30, 2008 Order, this Court held that plaintiff had successfully pled a RICO Enterprise under *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), the controlling Ninth Circuit authority.

> As discussed above, plaintiff has alleged a direct and indirect subsidiary relationship between Conseco, CIC, Conseco Marketing, Conseco Services and 40/86, thereby successfully alleging an ongoing organization.  Plaintiff has also made allegations regarding how the Conseco Group operates to facilitate defendants' alleged fraudulent scheme, alleging a common purpose, and that the alleged improprieties regarding the sale of annuities to seniors continue over time satisfying the requirement that plaintiff make sufficient allegations that the enterprise is a continuing unit.

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C-05-04726 RMW, 2008 U.S. Dist. LEXIS 111497, at *28-*30 (N.D. Cal. Sept. 30, 2008).

The common, classwide evidence offered by plaintiff amply supports the allegations in the Complaint and demonstrates Defendants' involvement in an ongoing enterprise with the common purpose to sell Conseco deferred annuities to seniors.  This evidence includes, among other things, documents and testimony from Conseco regarding its contractual relationships with its NMOs and sales agents,[7] the co-development of new deferred annuity products to be sold by Conseco,[8] control of its sales agents through marketing and sales production requirements,[9] the substantial compensation paid to agents,[10] and the Company's internal pricing and marketing strategies memoranda.[11]

---

[7]     Ex. 10, DNA000025-41; Ex. 36, CIC00032001-05; Ex. 13, Ardizone Depo. at 28:11-22 (███████████████████████████████████████).

[8]     Ex. 13, Ardizone Depo. at 135:21-136:17, 211:25-212:3.

[9]     Ex. 10, DNA000025-41; Ex. 36, CIC00032001-05.

[10]    Dellinger Decl., ¶¶25-28.

[11]    Ex. 4, CIC00064556-60 at 56 (████████████████████████████████████████████████

1     Because all class members share a common interest in demonstrating the existence of the

2 enterprise and the conspiracy that impacted them, plaintiff's claims present common issues

3 susceptible to class treatment.

### III.    THE REQUIREMENTS OF RULE 23(a) HAVE BEEN MET

5     Plaintiff can readily demonstrate the four elements of Rule 23(a): (a) numerosity of Class

6 members; (b) commonality of claims or issues; (c) typicality of plaintiffs' claims; and (d) adequacy

7 of representation by plaintiffs and class counsel.[12]  Fed. R. Civ. P. 23(a).

### A.    Numerosity

9     Rule 23(a)(1) requires "the class is so numerous that joinder of all members is impracticable."

10 Here, Conseco's electronic business records establish that the nationwide RICO Class encompasses

11 approximately ███ annuity policies.  Dellinger Decl., ¶23.  The proposed California Class

12 encompasses approximately ███ annuity policies.  *Id.*; Ex. 37, Conseco Life Insurance Company's

13 Response to Plaintiffs' First Set of Interrogatories at 4-5.  Numerosity is easily satisfied.  *See*

14 *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (numerosity satisfied where

15 there was potentially thousands of eligible class members).

### B.    Commonality

17     The liberally-construed standard of commonality requires the existence of "only a few

18 common legal and factual issues." *Negrete*, 238 F.R.D. at 488.  Under the "'common course of

19 conduct'" test applied by the Ninth Circuit, class certification is appropriate where consumers are

20 "'allegedly defrauded over a period of time by similar misrepresentations.'" *McPhail v. First*

21 *Command Fin. Planning, Inc.*, 247 F.R.D. 598, 609 (S.D. Cal. 2007).

---

23 ████████████); Ex. 3, Hilbert Article (senior citizens are

24 "'the best marketplace in the industry'" because "'that's where the money is'").

25 [12]    Very recently, an *en banc* panel of the Ninth Circuit clarified Rule 23's standards for class certification in *Dukes v. Wal-Mart Stores, Inc.*, Nos. 04-16688, 04-16720, 2010 U.S. App. LEXIS

26 8576 (9th Cir. Apr. 26, 2010), a Title VII sex discrimination action. In *Dukes*, the Ninth Circuit emphasized that the class certification analysis must focus on whether the plaintiff has raised

27 common, classwide claims, not whether the plaintiff will in fact prevail on such claims. *Id.* at *35, *42-*43.  Accordingly, a district court may only conduct a factual analysis to the extent it is

28 absolutely "necessary" to decide the requirements of Rule 23. *Id.* at *36 n.8.

Commonality is readily met here because plaintiff's claims are based on defendants' common course of conduct to market and sell Conseco deferred annuities to senior citizens based on certain misrepresentations and omissions. *Negrete*, 238 F.R.D. at 488. Conseco represents through its standardized written materials that its deferred annuities are safe, secure and competitive, when in fact, they are poorly performing products that are burdened with excessive, undisclosed commissions and other expenses. Moreover, Conseco deceives purchasers by claiming that its annuities offer a first year "premium credit," or "waiver" of the index margin, when in fact those features offer no real benefit and must be ultimately recouped from purchasers. Thus, these fundamental misrepresentations and omissions, which are also discussed in §IV.A.1, in connection with the issue of Rule 23(b)(3) predominance, are uniform and apply to all Class members.

## C.    Typicality

Typicality under Rule 23(a)(3) is satisfied where the named plaintiff's claims are reasonably co-extensive with absent class members' claims, even if the claims are not substantially identical. *Negrete*, 238 F.R.D. at 488. The element is met here as the claims of the Class representative are precisely the same as those of the proposed Classes, *i.e.*, they arise from the same overarching fraudulent scheme and course of conduct affecting all Class members. Indeed, "[t]he same sales pitch, strategy, and scheme that injured the named plaintiffs likewise injured the absent class members." *McPhail*, 247 F.R.D. at 610.

The Class representative here, Robert Hansen, at age 68, surrendered an existing annuity and used the proceeds of $108,194.24 to purchase a Conseco Choice equity-indexed annuity in March 2000. Ex. 38, CIC00000019; Ex. 39, CIC0000002-4. During the sale, Robert Zehner, a Conseco-appointed agent, presented Mr. Hansen with Conseco's standardized sales materials, including the annuity application and Benefit Summary and Disclosure form. Hansen Decl., ¶5; Ex. 11, CIC00000030-32 at 32. Mr. Hansen signed the application and disclosure form, affirming he received and reviewed Conseco's written materials. Hansen Decl., ¶¶5-6.

The Conseco Choice annuity purchased by Mr. Hansen featured a first year "premium credit" of 3% if he elected the fixed interest option, or first year index margin waiver if he elected the equity index option, the latter option of which he chose. The annuity also imposed high surrender charges

(starting at 20% for 15 years). Ex. 11, CIC00000030-32. Mr. Hansen did in fact surrender the Conseco annuity in 2004 and incurred a 20% surrender charge, leaving him with a cash amount of $91,566.26 – much less than his original premium amount. Ex. 8, CIC00000305. He therefore suffered a *return of negative 4.09%* on his investment. Complaint, ¶99.

Significantly, the sales materials and the annuity contract provided to Mr. Hansen failed to disclose the high commissions and other acquisition expenses embedded in the annuity, the costs of which Conseco recouped through its product spread and surrender penalties. Ex. 27, CIC00013696-707. The Conseco materials also misrepresented and concealed cost of the index margin waiver, which similarly was passed on to the purchaser. *Id.* Mr. Hansen therefore asserts claims that are typical of those asserted by the proposed Classes.

### D.  Adequacy and the Appointment of Class Counsel

The relevant inquiry for adequacy under Rule 23(a)(4) is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and whether "the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1020 (9th Cir. 1998). As discussed above, the interests of Mr. Hansen and the proposed Classes are fully aligned in determining whether Conseco misrepresented the products sold to them. Indeed, Mr. Hansen is a senior citizen who purchased a Conseco annuity, after being presented with standardized sales materials containing false and misleading statements. Adequacy is surely met here because there are no "'antagonistic or conflicting'" interests between the representative and proposed Classes. *See McPhail*, 247 F.R.D. at 611.

Likewise, adequacy is plainly met with plaintiff's counsel. The undersigned counsel – Barrack Rodos and Robbins Geller – have already been appointed by the Court to serve as Interim Co-Lead Class Counsel, and both firms have demonstrated that they are highly capable and willing to vigorously, efficiently and expeditiously prosecute this class action. *See* Dkt. No. 34, Notice of Entry of Order regarding appointment of interim co-lead class counsel, entered April 14, 2006; *see also Negrete*, 238 F.R.D. at 488-89 (finding predecessor firm, Coughlin Stoia, to be adequate class counsel). The resumes and biographies of these firms (Exs. 40, 41) reflect their substantial experience

and success in prosecuting large, complex class actions similar to the instant case. There is no question that plaintiff and his counsel will capably represent the Classes here.

For the same foregoing reasons, plaintiff makes the related request for the appointment of Barrack Rodos and Robbins Geller as co-lead counsel for the Classes, pursuant to Rule 23(g).

Because plaintiff can demonstrate numerosity, commonality, typicality and adequacy, all of the requirements of Rule 23(a) are satisfied.

## IV. RULE 23(b)(3) IS SATISFIED FOR THE FEDERAL RICO AND CALIFORNIA STATE LAW CLASSES

Under Rule 23(b)(3), certification is appropriate if: (a) questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members; and (b) the class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001). Because Conseco sold its deferred annuities based on uniform misrepresentations and omissions in its standardized, written materials, plaintiff satisfies both predominance and superiority.

### A. Predominance Is Satisfied

#### 1. Conseco's Uniform Misrepresentations to the Classes Establish Predominance

Predominance is surely met here because plaintiff's claims are based on a common scheme and course of conduct, devised and orchestrated by Conseco and its corporate affiliates to misrepresent the essential characteristics and true costs of Conseco deferred annuities. *See Negrete*, 238 F.R.D. at 495 (certifying a nationwide RICO class of seniors who purchased costly and inferior Allianz deferred annuities based on misrepresentations and omissions in Allianz's uniform sales materials); *Yokoyama*, 594 F.3d 1087 (certifying class of senior citizens who alleged misrepresentations in defendant's annuity sales brochures).

Here, Conseco presented all Class members with standardized sales materials that misrepresented and concealed the high embedded costs of its annuities, particularly the excessive commissions paid to its sales agents. Conseco further deceived Class members by promising an illusory first year bonus in the form of a "premium credit" or index margin "waiver." Nowhere in its

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- 14 -

1    sales materials or annuity contracts did Conseco disclose that it fully recovers the costs of the hidden

2    commission charges and the "bonus" features from Class members. Indeed, Conseco secretly

3    manipulated and increased the product spread on its annuities to extract those various costs from Class

4    members, thereby substantially lowering the interest ultimately credited to them. Ex. 28, Turner Depo.

5    at 71:18-21; Ex. 34, CIC00062662; Ex. 35, CIC00055248. Conseco never disclosed how the

6    imposition of the product spread impairs the value and performance of Class members' annuities.

7    Ex. 28, Turner Depo. at 13:18-23.

8           To ensure this scheme was uniformly implemented, Conseco required its sale agents to

9    strictly adhere to its written sales materials and contracts. Indeed, for every annuity sale, Conseco

10   sales agents were required to sign the Benefit Summary and Disclosure form and affirm that they

11   made no statement "contradicting" the Conseco sales materials. Ex. 43, CIC00265390-98; Ex. 23,

12   DNA000032. Moreover, Conseco required all Class members to sign the same disclosure form, as

13   well as the annuity application, affirming they "read" and "understand" the sales materials presented

14   to them. *See, e.g.*, Ex. 11, CIC00000030-32.

15          Accordingly, through its carefully-crafted sales materials – provided to all Class members at

16   the time of sale – Conseco concealed the hidden commissions and other costs of its annuities and

17   mischaracterized the "premium credit" and waiver of the index margin. Thus, while Conseco may

18   dispute the merits of plaintiff's claims – whether in fact the premium credit or index margin waiver

19   provide any real value and whether Class members were subject to a sales charge – it cannot dispute

20   that the issue of whether the misrepresentations and omissions at issue are false and misleading is

21   uniform and common to the proposed Classes as a whole. Conseco's fraudulent scheme, predicated

22   upon certain core documents presented to each Class member, therefore satisfies predominance.

23          The claims here are virtually identical to those brought in *Negrete*, 238 F.R.D. 482, which

24   also involved the sale of high cost and poor performing deferred annuities to seniors. In *Negrete*,

25   Judge Snyder of the Central District relied on the same type of common evidence, "***standardized***

26   ***written marketing materials supplied by Allianz***," including standardized consumer brochures and

27   "SOUs" (Statements of Understanding), signed by each class member, in finding predominance and

28   granting certification in a nationwide RICO action. *See Negrete*, 238 F.R.D. at 492.

1    The ruling in *Negrete* is echoed by the denial of the motion for decertification in *Iorio*,

2    another case involving the deceptive sale of annuities to seniors. In *Iorio*, Judge Sammartino of the

3    Southern District affirmed the finding of predominance with respect to the plaintiffs' fraud claim,

4    again, based on Allianz's standardized written materials. Ex. 42, *Iorio v. Allianz Life Ins. Co. of N.*

5    *Am.*, No. 05CV633 JLS (CAB), Order at 36 (S.D. Cal. July 8, 2008). Judge Sammartino recognized

6    that "*[t]he uniformity of* **[Allianz's]** *written materials with the alleged misrepresentations allayed*

7    *concerns about any differences in the oral communications that the independent selling agents*

8    *made to class members*." *Id.*

9    Recently, the Ninth Circuit reviewed the denial of class certification in another case alleging

10   the deceptive sale of deferred annuities to seniors. *Yokoyama*, 594 F.3d 1087. The Ninth Circuit

11   reversed and certified a class of seniors in Hawaii who purchased Midland annuities. The Ninth

12   Circuit found that because "[t]he plaintiffs' allegations . . . are that the deceptive acts or practices are

13   omissions or misstatements in Midland's own brochures[,] . . . plaintiffs will ***not*** require the

14   factfinder to parse what oral representations" were made to each plaintiff. *Id.* at 1093. Rather,

15   according to the Ninth Circuit, "the fact finder will focus on the standardized written materials given

16   to all plaintiffs . . . ." *Id.* The same is true here.

17   The Ninth Circuit's opinion in *In re First Alliance Mortgage Company*, 471 F.3d 977 (9th Cir.

18   2006) further compels a finding of predominance. There, First Alliance loan officers made

19   standardized sales presentations to borrowers and failed to disclose hidden fees "result[ing] in a large

20   class of borrowers entering into loan agreements they would not have entered had they known the true

21   terms." *Id.* at 991. The Ninth Circuit held:

22       ***[T]his court has followed an approach that favors class treatment of fraud claims***
         ***stemming from a "common course of conduct*.**" . . . "Confronted with a class of

23       purchasers allegedly defrauded over a period of time by similar misrepresentations,
         courts have taken the common sense approach that the class is united by a common

24       interest in determining whether a defendant's course of conduct is in its broad
         outlines actionable, which is not defeated by slight differences in class members'

25       positions[.]"

26   *Id.* at 990-91.

27   As in the aforementioned cases, Conseco provided standardized sales materials and contracts

28   to all Class members that were "unquestionably designed to obfuscate" the essential characteristics

of its annuities. *Id.* at 985. Indeed, Conseco's written materials misrepresent and otherwise fail to disclose critical features of the annuities, including the commissions, illusory premium credit and index margin waiver. Conseco's systematic use of sale materials and contracts to defraud seniors clearly raises a predominance of common issues.

### 2. Causation Can Be Established on a Classwide Basis

Causation, which "lies at the heart of a civil RICO claim," may be demonstrated on a classwide basis and certainly presents no obstacle to certification here. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004). Very recently, the Supreme Court confirmed that while reliance may be used to demonstrate causation, it is not itself an element or prerequisite for a claim under RICO. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 2145 (2008).

"There is . . . more than one way to demonstrate the causal connection' between the [defendant's] misrepresentations and an investor's injury." *McPhail*, 247 F.R.D. at 614. Plaintiff here offers at least two independent methods to prove causation on a classwide basis: (a) direct evidence of causation, as demonstrated through the applications and disclosure forms signed by Class members demonstrating actual reliance on Conseco's written sales materials; and (b) evidence establishing that plaintiff's injury flows directly from Conseco's misrepresentations and omissions, thus establishing the causal link.

### a. Contemporaneous Signed Statements by Class Members Are Direct Evidence of Causation

Plaintiff has presented direct, contemporaneous classwide evidence of causation. All Class members *twice* affirmed in writing – once on the application and again on the disclosure form – that they received, reviewed and understood the Conseco sales materials presented to them. It is difficult to imagine more compelling evidence of *actual* reliance and causation than contemporaneous documentation – the very source of the deceptive and misleading statements – which were signed by Class members themselves. Such documents insure that all Class members were subjected to the *same misrepresentations and omissions* concerning Conseco's annuities.

In cases where, as here, the documents used to commit the fraud are common to all class members and include misleading forms bearing class members' signatures, courts readily find

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- 17 -

1  causation. *Negrete*, 238 F.R.D. at 492 (Allianz's use of a standardized disclosure form, signed both

2  the purchaser and agent, constitutes common proof of causation).

3      Indeed, in *Iorio*, Judge Sammartino found that plaintiffs had demonstrated actual, classwide

4  reliance because all class members had signed "SOUs" acknowledging that they had received and

5  read Allianz's sales and product materials at the time they purchased their annuities. *Id.* ("***Their***

6  ***signatures on the SOUs, indicating that they received and read the applicable marketing***

7  ***brochures, and their recollections that the promise of a '10% immediate bonus' factored into their***

8  ***purchasing decision are sufficient to create a jury question on actual reliance***.").[13]  The

9  circumstances are no different here, as plaintiff and all Class members were required to sign

10  disclosure forms and applications establishing their actual reliance on Conseco's written materials.

11      And, in *McPhail*, Judge Gonzalez found that the plaintiff demonstrated classwide reliance,

12  and therefore predominance, because the misrepresentations made to the class of investors were

13  "***sufficiently similar***." *McPhail*, 247 F.R.D. at 614.  In so holding, Judge Gonzalez found that "the

14  reliance requirement must encompass the rise of sophisticated marketing strategies which rely on

15  communicating similar misrepresentations to a large class of investors." *Id.* at 614-15.

16      Here, the core misrepresentations and omissions are "sufficiently similar" to satisfy

17  predominance here. *Id.* at 614.  This case is even more compelling because all Class members were

18  required to sign disclosure forms acknowledging their receipt and review of Conseco's written

19  materials which include the false and misleading statements at issue.

20

21

22

---

23  [13]  Similarly, in *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 339 (N.D. Ill. 1997), the district court found that common contracts signed by class members served as evidence of actual reliance:

24      In cases like this one, where the common documents include a contract to which
25      every plaintiff is signatory, it is particularly sensible to view reliance questions as
       secondary: by definition, parties to a contract are aware of and rely on the
26      representations and omissions in the contract.  Thus, we conclude that common
       questions predominate with respect to the RICO claim.

27  *Id.* at 339.

28

### b. Causation Can Be Inferred Because Plaintiffs' Injury Flows Directly from the Misrepresentations and Since Conseco's Misrepresentations Concern the Fundamental Nature of Its Annuity Products

Causation can also be inferred based on the clear and logical connection between Conseco's uniform misrepresentations and the classwide injury suffered by purchasers as a result. *See* Dellinger Decl., ¶¶46-47 (Class members suffered "economic losses" from Conseco's undisclosed commission amounts and features such as the premium credit and index margin waiver.). As Judge Snyder found in *Negrete*, "[t]his evidence of standardized written presentations, coupled with plaintiffs' allegations that class members purchased annuity products far less valuable than other comparable products or the prices paid for them, adequately establishes proximate causation under *Poulos* at the certification stage." *Negrete*, 238 F.R.D. at 492.[14]

Moreover, causation can be inferred here as Conseco's standardized sales materials misrepresented and otherwise failed to disclose the fundamental characteristics and features of its deferred annuities. The decision by Class members to purchase these high cost, illiquid, poorly performing products necessarily leads to the conclusion that they relied on Conseco's misrepresentations. To conclude otherwise, would "deny human nature, run counter to the traditional presumption in favor of actors operating under rational economic choice, and leave this Court with an absurd conclusion." *Chisholm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 561 (E.D. Va 2000).[15]

---

[14] *See also* Ex. 42, *Iorio*, Order at 26 (annuity purchasers were entitled to seek damages based on their reliance on Allianz's misrepresentations concerning the bonus, undisclosed commissions and other costs); *Bastian v. Petren Res. Corp.*, 699 F. Supp. 161 (N.D. Ill. 1998) (holding that proximate cause established under RICO where plaintiff can show omissions led to decline in value of product purchased or invested in); *Maddox v. S. Eng'r Co.*, 500 S.E.2d 591, 594 (Ga. Ct. App. 1998) (explaining that proximate cause under RICO established where "injury flowed directly from the defendant's misrepresentations").

[15] In *Chisolm*, the plaintiffs brought a RICO action on behalf of a class arising out of defendant's churning scheme perpetrated against car purchasers who defaulted on their car loans and did not redeem their cars on repossession. *Id.* at 544. The court certified a subclass consisting of all purchasers who suffered repossession, were assessed a deficiency judgment, made payments toward that deficiency judgment, but were never credited the sales proceeds of the repossessed cars. *Id.* at 554, 559. The court concluded that "reliance [was] self-proving as to these class members who meet the subclass definition." *Id.* at 562.

### 3. Damages Will Be Proven Through Common Classwide Evidence

The existence of individual issues pertaining to damages serves as no bar to class certification, so long as the proposed method of proof is "plausible." *Negrete*, 238 F.R.D. at 494. As held in *Negrete*, "'[w]here . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.'" *Id.* Indeed, the determination of damages is invariably an individual question and does not defeat class action treatment. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Yokoyama*, 594 F.3d at 1094 ("In this circuit . . . damage calculations alone cannot defeat certification.").

As in *Iorio*, plaintiff here seeks recovery of damages based on Conseco's "undisclosed manipulation of the yield, which effectively reduced the rate of return" for the deferred annuities sold to the Classes. Ex. 42, *Iorio*, Order at 26. Class members here were sold Conseco deferred annuities, the rate of return on which were burdened with the cost of high, undisclosed commissions and illusory bonus features. Indeed, Conseco manipulated and increased the product spread on its annuities to recover those hidden costs, substantially reducing the amount of interest credited to Class members. Dellinger Decl., ¶¶32-35, 41-48. Out-of-pocket damages[16] based on Conseco's undisclosed costs and fees can and will be estimated at trial using the Company's own records and data. Dellinger Decl., ¶¶47-48.

Because damages are capable of being "plausibly" calculated on a classwide basis, the Classes accordingly should be certified.

### 4. Common Issues Predominate in the Proof of Plaintiffs' California Statutory and Common Law Claims

Plaintiff's California statutory claims, which include: (1) Unlawful, Deceptive and Unfair Business Practices ("UCL") (Cal. Bus. & Prof. Code §17200, *et seq.*); (2) Unlawful, Deceptive and

---

[16] Courts permit recovery of out-of-pocket damages in RICO actions. *See* Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law* §4.02[2][a] (2003) ("A standard measure of out-of-pocket loss is monies paid out minus any value received."); *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 258 n.2 (3d Cir. 2007) (finding insured suffered out-of-pocket damages after selling his house at a below market rate as a result of insurer's RICO scheme to discontinue disability insurance payments); *McCullough v. Suter*, 757 F.2d 142, 143 (7th Cir. 1985) (affirming damages under RICO for the difference between the $23,000 plaintiff entrusted to defendant to invest in coins and $10,000, the value of coins plaintiff actually received).

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- 20 -

1  Misleading Advertising ("FAL") (Cal. Bus. & Prof. Code §17500, *et seq.*); (3) Fraudulent

2  Concealment (Cal. Civ. Code §1710, *et seq.*); and (4) violations of Elder Abuse statute (Cal. Welf. &

3  Inst. Code §15600, *et seq.*), should be certified for the same reasons explained above, as these claims

4  are predicated on the same wrongful scheme and course of conduct by Conseco in marketing and

5  selling its annuities to seniors. *See* Ex. 14, *Clark* Order at 2, 7 (certifying UCL claim); *Negrete*, 238

6  F.R.D. at 495-96 (certifying UCL, FAL and §15600 claims based on same core RICO claims).

7  Consumer fraud actions based on standardized sales practices, such as those alleged here, are

8  precisely the type of cases that California courts find present common issues of law and fact suitable

9  for class certification. *See, e.g., Gentry v. Superior Court*, 42 Cal. 4th 443, 453 (2007) (emphasizing

10  the importance of class actions in consumer litigation); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808

11  (1971) ("Frequently numerous consumers are exposed to the same dubious practice by the same seller

12  so that proof of the prevalence of the practice as to one consumer would provide proof for all.").

13  This is especially true for claims brought under the UCL, as California courts have

14  consistently interpreted the language of §17200 broadly. *See, e.g., People ex rel. Gallegos v. Pac.*

15  *Lumber Co.*, 158 Cal. App. 4th 950, 959 (2008) ("The UCL is broad in scope . . . ."), *modified*, 208

16  Cal. App. LEXIS 167 (Cal. App. 1st Dist. Feb. 1, 2008); *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.

17  App. 4th 659, 676 (2006) ("'The Legislature intended this "sweeping language" [of §17200] to

18  include "'anything that can properly be called a business practice and that at the same time is

19  forbidden by law.'" . . . Thus, the scope of the UCL is "broad."'"); *McKell v. Washington Mut.*, 142

20  Cal. App. 4th 1457, 1471 (2006) ("The scope of the UCL is quite broad.").

21  Here, plaintiffs' state law claims are premised on many of the same common issues that

22  support certification of their RICO claim, namely whether Conseco's marketing and sales materials,

23  including its "disclosure" statements, uniformly misrepresented or otherwise failed to disclose certain

24  material facts about its deferred annuities. Other common issues include whether Conseco's marketing

25  and sales practices, implemented or encouraged by Conseco, were unlawful, unfair or fraudulent, and

26  whether Conseco's practices were likely to deceive Class members under §17200. *See* Complaint,

27

28

1 ¶¶162, 186-194. Another common issue is whether Conseco's deceptive conduct violated certain state

2 statutes which constitute predicate acts under §17200's unlawful prong.[17]

3      Judge Jones of the Los Angeles Superior Court certified a similar state court case against

4 National Western for its deceptive sale of deferred annuities to seniors. *See Clark v. Nat'l W. Life*

5 *Ins. Co.*, No. BC321681 (Cal. Super. Ct., Los Angeles Cty.). In *Clark*, plaintiffs alleged that

6 National Western violated California Insurance Code §10127.13 and the UCL by failing to disclose

7 the surrender charges for its annuities and by targeting seniors for the sale of its annuities. Finding

8 that such issues could be tried with common evidence, the court certified a state-wide class of

9 California residents who had purchased such annuities. *Id.* at 7-8.[18]

10      Furthermore, with respect to plaintiff's UCL/FAL claims, Conseco cannot defeat class

11 certification by arguing that individual proof of reliance is required. First, neither the UCL nor the

12 FAL requires proof of individual reliance. *See In re Tobacco II*, 46 Cal. 4th 298, 316-18, 326, 331

13 (2009); *Mass. Mut.*, 97 Cal. App. 4th at 1289 ("liability for restitution under . . . the UCL may be found

14 without any individualized proof of deception and solely on the basis a defendant's conduct was likely

15 to deceive consumers").

16      As discussed above, plaintiff can show that Conseco's misrepresentations were the cause of

17 his injuries because he signed the consumer disclosure form, thereby confirming that he received and

18 read the sales materials containing the misrepresentations. *See* §II.A, above; *Vasquez*, 4 Cal. 3d at

19

20 [17]      Defendants' practices and conduct violate: (i) Cal. Civ. Code §§1573, 1575, 1709, 1710 and

21 1750, *et seq.*; (ii) Cal. Bus. & Prof. Code §17500; (iii) Cal. Ins. Code §§330-34, 762, 780, 781, 785, 787(a), (i), (k), 789.8, *et seq.*, 10127.10, and 10127.13; (iv) Cal. Welf. & Inst. Code §15610.30;

22 (v) Cal. Penal Code §§368, *et seq.* and 484; and (vi) Cal. Corp. Code §§25230 and 25235. *See* Complaint, ¶¶162, 186-203.

23 [18]      Conseco's fraudulent scheme and common course of conduct that form the basis of plaintiffs'

24 state law claims is also analogous to the deceptive insurance scheme in *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002). In *Mass. Mutual*, plaintiffs successfully certified a

25 class action under the UCL and the CLRA, based on the claim that Mass. Mutual sold "vanishing premium" life insurance policies leading purchasers to believe they would receive a discretionary

26 dividend that, over time, could be used to pay down the premiums due on such policies. *Id.* at 1291. As in *Mass. Mutual*, plaintiffs' state law claims here are based, in large part, on Conseco's

27 manipulation of the crediting rate by imposing costs on plaintiffs which allowed Conseco to recoup the costs of commissions and bonuses.

28

1  814. As recently affirmed in *Iorio*, classwide adjudication of such claims is appropriate "because the

2  uniformity of written representations" and existence of the signed disclosure forms was sufficient to

3  show causation. Ex. 42, *Iorio*, Order at 36.

4       The Ninth Circuit, as stated above, has echoed this assertion, permitting certification of

5  common law fraud claims where the claims of "similar misrepresentations" "stem[] from a 'common

6  course of conduct,'" even in the face of "'slight differences in class members' positions.'" *First*

7  *Alliance*, 471 F.3d at 989-90. A presumption of reliance is particularly appropriate here "because of

8  the distribution of an allegedly material misrepresentation to all members of the class and the class

9  members' subsequent purchases of the annuities as acts consistent with reliance." Ex. 42, *Iorio*,

10  Order at 44. On these grounds, certification of plaintiff's state law claims is warranted.[19]

11       **B.    The Superiority of Class Action Litigation Is Established Here**

12       Superiority is demonstrated where "class-wide litigation of common issues will reduce

13  litigation costs and promote greater efficiency." *Negrete*, 238 F.R.D. at 493. Rule 23(b)(3) sets

14  forth the relevant factors for determining whether "a class action is superior to other available

15  methods for fairly and efficiently  adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

16  "'[C]onsideration of these factors requires the court to focus on the efficiency and economy elements

17  of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated

18  most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

19  1190 (9th Cir. 2001).

20       The Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification here.

21  The first factor for the Court to consider is "the likely difficulties in managing a class action."

22  Fed. R. Civ. P. 23(b)(3)(D). The existence of manageability issues does not render an otherwise

23  certifiable class unsuited for class certification. *See Dukes v. Wal-Mart*, 509 F.3d 1168, 1192-93

24  (9th Cir. Cal. 2007) (concluding that classwide treatment was superior method because there was "at

25  least one method of managing this large class action . . . albeit somewhat imperfect"). In this case,

26

27  [19]    For the same reasons, plaintiff also urges the Court to certify plaintiff's Elder Abuse claims

28  pursuant to Cal. Welf. & Inst. Code §15610, *et seq.*, for class treatment. *See Negrete*, 238 F.R.D. at 496.

no significant manageability issues will arise from the nature and complexity of plaintiff's claims. As explained above, the issue of liability will turn on whether Conseco engaged in a common course of conduct, using misleading, standardized sales materials and contracts, to target and exploit seniors in the sale of deferred annuities. Nor will damages give rise to, or otherwise create, manageability concerns. Indeed, any individual issues that may arise at the damages stage will "not outweigh the benefits of proceeding in a class action format." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009); *see Yokoyama*, 2010 U.S. App. LEXIS 2631, at *15-*16.

The second factor concerns the class members' interest in individually controlling separate actions. The Class members in this case are all senior citizens, many of whom are retired and live on fixed incomes. They have little incentive to litigate their claims on an individual basis because the out-of-pocket expense and personal commitment necessary to litigate each claim will outweigh any potential recovery. *See Negrete*, 238 F.R.D. at 495; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965 (1985) ("Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). Classwide treatment of the claims of the proposed Classes, consisting of more than 26,000 seniors, is not only a much more efficient way to proceed, it is likely the only realistic for these senior consumers to proceed.

The third factor concerns "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Plaintiff is unaware of any other class case against Conseco concerning the sale of its deferred annuities to seniors. This nationwide RICO action is really the only way for senior purchasers nationwide to obtain relief.

Finally, the Court may consider the desirability of concentrating the claims in this forum. Fed. R. Civ. P. 23(b)(3)(C). This factor's "emphasis is on the forum selected, not the concentration of claims." 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §4.31 (4th ed. 2008). This District is a compelling forum for litigating this putative class action because Conseco sold a large share of its deferred annuities in California and because the proposed class representative resides here. Additionally, plaintiff seeks certification of a California sub-class based on state law consumer protection, false advertising and elder abuse claims. *See Negrete*, 238 F.R.D. at 495. Accordingly, class treatment in the present forum represents an efficient and reasonable use of judicial resources.

526552_1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL - C-05-04726-RMW

- 24 -

1   Accordingly, maintenance of this suit as a class action is a fair and efficient method to

2   adjudicate the claims of all Class members without burdening the judiciary with a multiplicity of

3   duplicative lawsuits. *Id.* at 493-94.

4   **V.      CONCLUSION**

5         For each of the foregoing reasons, plaintiff's motion for class certification, appointment of

6   class representatives and appointment of class counsel should be granted.

7                                                         Respectfully submitted,

8   DATED:  June 7, 2010                    ROBBINS GELLER RUDMAN
                                                             & DOWD LLP
9                                                         JOHN J. STOIA, JR.
                                                         THEODORE J. PINTAR
10                                                      PHONG L. TRAN
                                                         STEVEN M. JODLOWSKI

11

12                                                      _____s/ Theodore J. Pintar_____
                                                         THEODORE J. PINTAR

13                                                      655 West Broadway, Suite 1900
                                                         San Diego, CA  92101
14                                                      Telephone:  619/231-1058
                                                         619/231-7423 (fax)

15

16  DATED:  June 7, 2010                    BARRACK, RODOS & BACINE
                                                         STEPHEN R. BASSER
17                                                      SAMUEL M. WARD

18                                                      _____s/ Stephen R. Basser_____
                                                         STEPHEN R. BASSER
19

20                                                      600 West Broadway, Suite 900
                                                         San Diego, CA  92101
21                                                      Telephone:  619/230-0800
                                                         619/230-1874 (fax)

22                                                      Interim Co-Lead Counsel for Plaintiff

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2010, I electronically filed the foregoing with the Clerk of the
Court using the CM/ECF system which will send notification of such filing to the e-mail addresses
denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the
foregoing document or paper via the United States Postal Service to the non-CM/ECF participants
indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.  Executed on June 7, 2010.

s/ Theodore J. Pintar
THEODORE J. PINTAR

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:tedp@rgrdlaw.com

526552_1

# Mailing Information for a Case 5:05-cv-04726-RMW

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stephen R. Basser**
  sbasser@barrack.com,jhaeussler@barrack.com,cfessia@barrack.com

- **Thomas A. Doyle**
  Thomas.A.Doyle@bakernet.com

- **James J Dries**
  James.J.Dries@bakernet.com

- **Ingrid M. Evans**
  ievans@waterskraus.com,bsantos@waterskraus.com,rredmayne@waterskraus.com

- **Howard D. Finkelstein**
  fk@classactionlaw.com

- **Andrew S. Friedman**
  afriedman@bffb.com,rcreech@bffb.com,nvarner@bffb.com

- **Tod Lawrence Gamlen**
  tod.l.gamlen@bakernet.com,robin.m.robledo@bakernet.com,ahmad.k.jamal@bakernet.com,fsay@bakernet.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Mark L Karasik**
  Mark.L.Karasik@bakernet.com

- **Sundeep Ravindra Patel**
  spatel@waterskraus.com

- **Theodore J. Pintar**
  TedP@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Patricia Nicole Syverson**
  psyverson@bffb.com

- **Phong L. Tran**
  ptran@rgrdlaw.com,e_file_sd@rgrdlaw.com,csindac@rgrdlaw.com

- **Samuel M. Ward**
  sward@barrack.com,lxlamb@barrack.com,kisbell@barrack.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Michael D Thamer
Law Offices of Michael D.Thamer
12444 South Highway 3
Post Office Box 1568
Callahan, CA 96014-1568
```